1 F.3d 1250
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Charles WASHINGTON, Plaintiff-Appellant,
v.
Donna E. SHALALA,* Secretary of Health and Human
Services, Defendant-Appellee.
 No. 92-6407.
 United States Court of Appeals, Tenth Circuit.
 July 22, 1993.
 
 Before BALDOCK and KELLY, Circuit Judges, and BENSON,** District Judge.
 ORDER AND JUDGMENT***
 KELLY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 This appeal is from an order of the district court affirming the Secretary's denial of plaintiff Charles Washington's request for disability benefits. The administrative law judge (ALJ) determined that Mr. Washington was not entitled to those benefits because he was not disabled as defined in the Social Security Act. See 42 U.S.C. Sec. 423(d)(1)(A). On appeal, Mr. Washington argues that the ALJ erred by not finding him disabled as a result of his mental impairments. We reverse and remand for award of benefits.
 
 
 3
 We review to determine whether the record as a whole contains substantial evidence supporting the ALJ's decision regardless of whether we would have reached a different result based on the record. Brown v. Bowen, 801 F.2d 361, 362 (10th Cir.1986). Evidence is not substantial if it is overwhelmed by other evidence or it is actually mere conclusion. Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988). We must also determine whether the Secretary's action is consistent with the Social Security Act and the relevant regulations and case law. See Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir.1984).
 
 
 4
 The Secretary has established a five-step evaluative process for determining whether a claimant is disabled. See Williams, 844 F.2d at 750-52. Mr. Washington's primary contention is that the ALJ erred at step three by not finding that he had a somatoform disorder that met the Listings of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.07, in which case he would be conclusively found to be disabled. In addition, he contends that the ALJ erred at steps four and five in concluding that he had the capacity to return to his past relevant work and to perform certain other work to which he has transferable skills.
 
 
 5
 Mr. Washington initially applied for disability insurance benefits in March 1986 alleging various physically disabling conditions including high blood pressure, heart problems, bronchitis, and back problems. In May 1988, apparently at the request of his attorney, he was evaluated by psychiatrist Dr. Harry Mendros. Dr. Mendros diagnosed Mr. Washington as suffering from an affective disorder, a somatoform disorder, and a substance addiction (alcohol) disorder. In describing the severity of the impairments, Dr. Mendros indicated that Mr. Washington's restriction of activities of daily living and difficulties in maintaining social functioning were marked; his deficiencies of concentration, persistence or pace were frequent; and his episodes of deterioration or decompensation were repeated. R. at 327; see also 20 C.F.R. Pt. 404, Subpt. P., App. 1, Sec. 12.00C (describing categories for assessing severity of impairments). Dr. Mendros's diagnosis specifically met the Listing requirements for somatoform disorder. See 20 C.F.R. Pt. 404, Subpt. P., App. 1., Sec. 12.07.
 
 
 6
 After his initial hearing, the ALJ concluded that Mr. Washington had a severe respiratory impairment and a somatoform disorder but that he was not disabled and could perform his past work as a busboy, dishwasher, waiter, or cleaning supervisor. The Appeals Council remanded the case to the ALJ because the record indicated Mr. Washington had an "on-going impairment whose roots may be in alcohol" and for further evaluation of how his mental impairments affected his residual functional capacity. R. at 43. The Appeals Council directed that the ALJ obtain a consultative mental status examination and a medical assessment describing Mr. Washington's ability to reason and make occupational, personal, and social adjustments. Id.
 
 
 7
 On remand, Mr. Washington was evaluated by psychiatrist Marcus Barker, M.D., and psychologist Elizabeth Rasmussen, Ph.D. Dr. Barker diagnosed Mr. Washington as being chronically depressed and having situational depression. He also stated that
 
 
 8
 [i]t would be hard to call him a major depression at this point. He is a burned out alcoholic and the underlying passive-dependent personality now predominates the picture. He does seem to have some organic difficulties that he focuses on. To this degree, perhaps one would say that he may have a hypochondriacal preoccupation but it seemed to me like he actually has physical difficulties.
 
 
 9
 R. at 340. Dr. Barker also prepared a Medical Assessment of Ability To Do Work-Related Activities (Mental). On this form, he described Mr. Washington's ability to follow work rules and to interact with supervisors as good, but described the following abilities as being "fair," which the form defines as seriously limited though not precluded: relate to coworkers; deal with the public; use judgment; understand, remember, and carry out simple job instructions; maintain personal appearance; behave in an emotionally stable manner; and relate predictably in social situations. In addition, Dr. Barker concluded that Mr. Washington had either a poor or no ability to deal with work stresses; to function independently; to understand, remember, and carry out complex or detailed job instructions; and to demonstrate reliability.
 
 
 10
 Dr. Rasmussen determined that Mr. Washington's IQ test scores placed him in the borderline range of intelligence, meaning not quite mentally retarded. She stated that he "is reporting a considerable amount of discomfort which he appears to be preoccupied with and probably creates some confusion in his thinking. He is not psychotic. He does experience some confusion. He is, however, able to make some decisions and does have some cognitive and reasoning abilities." R. at 345. She also prepared the same medical assessment form as did Dr. Barker. On this form she classified as good Mr. Washington's ability to follow work rules, interact with supervisors, maintain his appearance, and behave in an emotionally stable manner. She described as seriously limited his ability to deal with work stresses and to carry out complex job instructions. For all other categories, Dr. Rasmussen's check-marks straddle the line between good and fair, though the ALJ apparently interpreted these marks as meaning good. In addition, Dr. Rasmussen noted in addressing other work-related activities affected by Mr. Washington's impairments that the "[i]ssue of pain and discomfort dominates his whole life. Not able to do much of anything." R. at 347.
 
 
 11
 The ALJ found that Mr. Washington did not have a somatoform disorder. He concluded that while he may have had the disorder when Dr. Mendros evaluated him, there was no indication from subsequent evaluations that the disorder persisted. We cannot say that this finding is not supported by substantial evidence.
 
 
 12
 The ALJ did find that Mr. Washington was severely impaired by an affective disorder, a personality disorder, and a substance addiction disorder. The ALJ indicated that the affective disorder was a depressive syndrome characterized by appetite disturbance with change in weight, sleep disturbance, decreased energy, difficulty concentrating or thinking, thoughts of suicide, and situational depression. The personality disorder was characterized by seclusiveness or autistic thinking, persistent disturbances of mood or affect, and pathological dependence, passivity, or aggressively. However, the ALJ also determined that Mr. Washington had no mental or nonexertional impairments that would prevent him from returning to his past relevant work or working in certain other areas for which a vocational expert said he had transferrable skills. The ALJ concluded that "it is clear from the evidence as giving [sic] by both Dr. Rasmussen and Dr. Barker that he is capable of making occupational adjustments, making performance adjustments, and making personal social adjustments." R. at 28. The ALJ did not address Dr. Mendros's assessment of Mr. Washington's social and occupational abilities. The ALJ noted that Mr. Washington may have situational depression, but that "this is not shown as materially affecting his ability to function as is indicated by the recent reports of both Dr. Barker and Rasmussen as well as other reports given by the physicians who have examined him basically for other physical problems." Id.
 
 
 13
 We cannot agree with the ALJ that the evidence shows Mr. Washington to be able to make occupational, performance, and personal social adjustments. The assessments of Drs. Mendros and Barker clearly indicate that Mr. Washington is at least seriously limited in his ability to make these adjustments. While Dr. Rasmussen's equivocal, line-straddling evaluation could possibly be construed to provide some support for the ALJ's determination, we do not believe that it alone comprises substantial evidence. Her assessment is ambiguous, she concluded that Mr. Washington was "[n]ot able to do much of anything" and she is a psychologist rather than a psychiatrist like Drs. Mendros and Barker.
 
 
 14
 In addition, in performing the step four analysis of whether Mr. Washington could return to his past relevant work, the ALJ was required to investigate and make explicit findings concerning the mental demands of Mr. Washington's past work and to compare those demands with his mental impairments. See 20 C.F.R. Sec. 404.1520(e); S.S.R. 82-62; Andrade v. Secretary of Health & Human Serv., 985 F.2d 1045, 1048-49 (10th Cir.1993); Groeper v. Sullivan, 932 F.2d 1234, 1238-39 (8th Cir.1991). Though the ALJ found Mr. Washington to be severely mentally impaired, he did not evaluate the demands of his past work in light of these impairments. We therefore conclude that the ALJ's determination that Mr. Washington could return to his past work is not supported by substantial evidence.
 
 
 15
 The ALJ also attempted to evaluate Mr. Washington under step five at which point the burden shifts to the Secretary to prove that, considering his impairments and other factors, there are jobs in the national economy to which a claimant's skills are transferrable. See Williams, 844 F.2d at 751-52. A vocational expert testified that Mr. Washington had skills that could transfer to other jobs in the economy. However, while the ALJ queried the expert with several hypothetical questions addressing some of Mr. Washington's impairments individually, he did not ask the expert hypothetical questions addressing all of Mr. Washington's mental impairments in combination. The expert's testimony therefore cannot constitute substantial evidence to support the ALJ's decision. Hargis v. Sullivan, 945 F.2d 1482, 1491-92 (10th Cir.1991). Further, in response to a hypothetical question from Mr. Washington's attorney that more closely addressed Mr. Washington's impairments as discussed above, the vocational expert concluded that the hypothetical person could not perform any jobs.
 
 
 16
 We therefore conclude that the ALJ's determination that Mr. Washington is not disabled is not supported by substantial evidence, and we REVERSE the judgment of the United States District Court for the Western District of Oklahoma. Because of the existing evidence concerning Mr. Washington's employability and the length of time this case has been pending, we do not believe that further administrative proceedings are appropriate. See Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir.1993). We therefore REMAND the cause to the Secretary for an award of benefits.
 
 BENSON, District Judge, dissenting:
 
 17
 I respectfully dissent from the majority opinion. The record as a whole supports the Administrative Law Judge's decision. The evaluations of Drs. Barker and Rasmussen and the testimony of the vocational expert provide substantial evidence in support of the finding that Mr. Washington was able to perform other jobs in the economy. The Administrative Law Judge's use of an incomplete hypothetical does not render the expert testimony inadmissible or unreliable. The vocational expert was given the opportunity to review the case file and to listen to testimony given in the case. She was present at the entire hearing. She was obviously aware of all of Mr. Washington's alleged impairments. In Diaz v. Secretary of HHS, 898 F.2d 774, 777 (10th Cir.1990), we recognized that any error from using incomplete hypotheticals is minimized when the vocational expert is present at the hearing. I would affirm the judgment of the District Court.
 
 
 
 *
 Donna E. Shalala is substituted for former Secretary of Health and Human Services Louis W. Sullivan, pursuant to Fed.R.App.P. 43(c)(1)
 
 
 **
 Honorable Dee V. Benson, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 ***
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3